# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NICHOLAS ARANDA,

       Plaintiff,

vs.                                                      No. CIV 12-0405 JB/ACT

FOAMEX INTERNATIONAL
d/b/a FXI, Inc.,

       Defendant.

## <u>AMENDED MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand for Lack of

Subject Matter Jurisdiction and Defects in Removal Procedure, filed May 17, 2012 (Doc.

7)("Motion to Remand"). The Court held a hearing on June 26, 2012. The primary issues are:

(i) whether Defendant FXI, Inc.[2] adequately established that the Court has subject-matter jurisdiction

over this case; and (ii) whether FXI, Inc. timely filed its Notice of Removal, filed April 17, 2012

(Doc. 1). The Court finds that FXI, Inc. has established, by a preponderance of the evidence, that

the amount in controversy exceeds $75,000.00 and that the Court has subject-matter jurisdiction.

The Court will, however, remand the case to the Second Judicial District Court, County of

Bernalillo, State of New Mexico, because the Notice of Removal was untimely and filed outside of

the thirty-day window that Congress established for removal in 28 U.S.C. § 1446(b). Accordingly,

---

[1]The Court files this Amended Memorandum Opinion to correct typographical errors on page 2 and page 33 of its Memorandum Opinion and Order, filed July 10, 2012 (Doc. 30). The Court changes page 2 to read "Aranda alleges that, on February 24, 2010, he slipped . . . ." The Court changes the first "$45,000.00" figure on page 33 to "$15,000.00" and the word "ration" to "ratio."

[2]FXI, Inc. asserts that it was improperly named as "Foamex International d/b/a FXI, Inc." Notice of Removal at 1, filed April 17, 2012 (Doc. 1). Accordingly, when the Court refers to the defendant in this case, the Court will refer to FXI, Inc.

the Court will grant the Motion to Remand.

**PROCEDURAL BACKGROUND**

On December 22, 2011, Plaintiff Nicholas Aranda filed his Complaint to Recover Damages for Personal Injuries in the Second Judicial District Court, County of Bernalillo, State of New Mexico.  See Doc. 1 at 6-11 ("Complaint").  Aranda resides in Albuquerque, New Mexico.  See Complaint ¶ 1, at 6.  He asserts that Foamex International is a Delaware corporation doing business in New Mexico.  See Complaint ¶ 2, at 6.  Aranda alleges that, on February 24, 2010, he slipped on hydraulic fluid, which had leaked from a forklift that had been improperly repaired, and that the incident caused him to suffer a: (i) torn anterior cruciate ligament; (ii) a lateral meniscus tear; (iii) a grade 4 femoral condral lesion to his right knee; and (iv) a severe contusion to his left knee.  See Complaint ¶ 23, at 8.  He required surgery on his right knee and medical treatment for both knees.  See Complaint ¶ 24, at 8.  Aranda asserts that he continues to suffer decreased mobility, permanent pain in his right knee, and a limp when he walks.  See Complaint ¶ 25, at 8.  Aranda asserts three counts against Foamex International: (i) negligence based on Foamex International creating "a dangerous condition by failing to adequately maintain and service its forklifts and failing to allow adequate maintenance and servicing of obvious safety issues"; (ii) premises liability based on Foamex International's alleged failure to use ordinary care to keep the premises safe for Aranda's use; and (iii) failure to provide adequate safety measures and plans based on Foamex International's duty to provide Aranda with a safe place to work.  Complaint ¶¶ 10, 37, 41, at 9-10.  As relief, Aranda requests actual and punitive damages.  See Complaint at 11.

On April 17, 2012, FXI, Inc., which the Complaint  improperly named as Foamex International, filed its Notice of Removal.  See Doc. 1.  FXI, Inc. asserts that Aranda is a New Mexico citizen.  See Notice of Removal ¶ 2, at 1.  It further asserts that it is a Delaware corporation

with its principal place of business in Pennsylvania, making it a citizen of Delaware and Pennsylvania.  See Notice of Removal ¶ 2, at 1.  It argues that "[t]he substantive allegations of Plaintiff's Complaint indicate that the matter in controversy exceeds $75,000."  Notice of Removal ¶ 3, at 2.  FXI, Inc. contends that the Court has original jurisdiction, under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00 and because the suit is between citizens of different states.  See Notice of Removal ¶ 4, at 2.

On May 17, 2012, Aranda filed his Motion to Remand.  See Doc. 7.  He argues that "Foamex International, doing business as FXI, Inc. ('FXI') failed to adequately establish the amount in controversy in its Notice of Removal as required by 28 U.S.C. Section 1446."  Motion to Remand at 1.  He further asserts that FXI, Inc. filed its Notice of Remand sixty-two days after Aranda served its registered agent, "well outside the time period allowed by 28 U.S.C. § 1446(b)."  Motion to Remand at 1.  Aranda contends that FXI, Inc. has appointed CT Corporation to act as its agent to accept "any process, notice or demand required or permitted by law to be served upon" the corporation.  Motion to Remand at 2.  He asserts that, on February 15, 2012, he served CT Corporation with process, and that "[s]ervice was accomplished by certified, return-receipt mail . . . in compliance with Rule 1-004(E)(3) and (G)(1) of the New Mexico Rules of Civil Procedure."  Motion to Remand at 2.  Aranda represents that, on February 15, 2012, CT Corporation sent a letter to his counsel and to the Second Judicial District Court stating that CT Corporation was returning service, because "Foamex International is not listed in [its] records or the records of the State of NM."  Motion to Remand at 2-3.  He contends that, on March 5, 2012, after verifying that CT Corporation is FXI, Inc.'s agent, he filed a Certificate of Service of Process (dated March 5, 2012), filed May 17, 2012 (Doc. 7-1)("Certificate of Service"), in compliance with N.M.R.A. 1-004(L).  Motion to Remand at 3.  He asserts that the Certificate of Service explains that service was

accomplished on February 5, 2012, that CT Corporation incorrectly returned service to Aranda, and that he would mail service to FXI, Inc.'s local plant and its Delaware office to move the case forward.  See Motion to Remand at 3.  Aranda represents that, on March 26, 2012, Benjamin Thomas, FXI, Inc.'s counsel, contacted him, said that FXI, Inc. "was happy to accept service of process," and requested that Aranda's counsel, Josh Ewing, send an acceptance of service request. Motion to Remand at 3 (citing Letter from Josh Ewing to Benjamin Thomas at 8 (not dated), filed May 17, 2012 (Doc. 7-1)("Ewing Letter")).  Aranda states that, when Mr. Ewing did not send acceptance of service papers, Mr. Thomas field an acceptance of service in state court stating that the date of service was March 22, 2012.  See Motion to Remand at 3 (citing Acceptance of Service at 11 (dated April 5, 2012), filed May 17, 2012 (Doc. 7-1)).

Aranda first asserts that FXI, Inc.'s Notice of Removal does not comply with 28 U.S.C. § 1446's amount-in-controversy requirement.  See Motion to Remand at 4.  He emphasizes that there is a presumption against removal.  See Motion to Remand at 4 (citing Laughlin v. Kmart Corp., 50 F.3d 871, 871 (10th Cir. 1995)).  He argues that FXI, Inc. must establish the amount in controversy by a preponderance of the evidence.  See Motion to Remand at 4 (citing McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008)).  He further asserts that "[a] federal court determines the amount in controversy between parties on the facts as they exist at the time the defendant files a notice of removal."  Motion to Remand at 4 (emphasis in original)(quoting Varela v. Wal-Mart Stores, East, Inc., 86 F.Supp.2d 1109 (D.N.M. 2000)(Baldock, J.)).  Aranda contends that, because the Complaint did not set forth the amount in controversy, FXI, Inc. needed to affirmatively establish that amount in its Notice of Removal.  See Motion to Remand at 4.  He argues that FXI, Inc.'s "conclusory allegations" that the Complaint's substantive allegations indicate that the amount in controversy is greater than $75,000.00 are insufficient to establish the amount by

-4-

a preponderance of the evidence.  Motion to Remand at 5.  He points out that FXI, Inc. "did not make any attempt to explain why the damages in this case met the amount in controversy."  Motion to Remand at 6 (citing Coca-Cola Bottling of Emporia v. S. Beach Beverages Co., 98 F.Supp.2d 1280 (D. Kan. 2002)).  Aranda asserts that, instead, "FXI appears to have engaged in some attempt to get [him] to carry its burden and provide a specific monetary damage amount."  Motion to Remand at 6 (citing Letter from Benjamin Thomas to Josh Ewing at 9 (dated April 30, 2012), filed May 17, 2012 (Doc. 7-1)("Thomas Letter")).  He argues that a defendant may not engage in post-removal attempts to establish jurisdiction.  See Motion to Remand at 6 (citing Laughlin v. Kmart Corp., 50 F.3d at 873; Coca-Cola Bottling of Emporia v. S. Beach Beverages Co., 98 F.Supp.2d at 1280; Varela v. Wal-Mart Stores, East, Inc., 86 F.Supp.2d at 1112).  He contends that an opinion by the Honorable James A. Parker, Senior United States District Judge, in Hernandez v. Safeco Insurance Company of America, No. Civ. 11-0245, Memorandum Opinion and Order, filed September 8, 2011 (Doc. 33)(Parker, S.J.)("Hernandez MOO"), is "directly on point."  Motion to Remand at 6.  Aranda asserts that, in the Hernandez MOO, Judge Parker held that the "Tenth Circuit Court of Appeals has consistently held that a court cannot consider post-removal documents in determining the amount in controversy."  Motion to Remand at 7.  He notes that Judge Parker held:

> Vague and general allegations are simply insufficient for the Court to estimate, without resorting to speculation, what Plaintiff's claimed damages amount to and whether those damages exceed $75,000.  Because the FIRST AMENDED COMPLAINT does not suffice to show that the amount in controversy is met, the Defendant should have provided specific facts in the NOTICE OF REMOVAL to demonstrate that Plaintiff's damages exceed $75,000.

Motion to Remand at 8 (citing Hernandez MOO at 9-10).  He argues that FXI, Inc. did not, in the Notice of Removal, offer any facts to carry its burden and did not refer to any numerical value.  See Motion to Remand at 9.

Aranda next asserts that FXI, Inc. did not file its Notice of Removal within thirty days of service of process.  See Motion to Remand at 9.  He argues that 28 U.S.C. § 1446 requires that a notice of removal must be "filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  Motion to Remand at 10.  He contends that FXI, Inc. received proper service under New Mexico law and that the Court is bound to follow state law when determining proper service.  See Motion to Remand at 10 (citing Hardy v. Square D. Co., 199 F.Supp.2d 676 (N.D. Ohio 2002)).  Aranda asserts that, in accordance with N.M.R.A. 1-004, he served FXI, Inc.'s agent on February 12, 2012, by return-receipt, certified mail and that such service was proper.  See Motion to Remand at 10.  He argues that FXI, Inc.'s attempt to remove the case more than thirty days after its agent was served renders the removal untimely.  See Motion to Remand at 11.  He contends that service of process triggers 28 U.S.C. § 1446's thirty-day time period.  See Motion to Remand at 12.  He asserts that service on CT Corporation, on February 12, 2012, triggered the removal clock.  See Motion to Remand at 12.  Aranda argues that numerous courts have found service on CT Corporation or other designated agents to be sufficient to trigger the thirty-day time period.  See Motion to Remand at 12.  He contends that courts have distinguished between statutory agents and designated agents, with the latter triggering the § 1446 time period.  See Motion to Remand at 13.  He asserts that FXI, Inc. designated CT Corporation as its agent, that he served CT Corporation, and that service occurred on February 15, 2012.  See Motion to Remand at 18.

On May 31, 2012, FXI, Inc. filed the Defendant's Response to Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction and Defects in Removal Procedure.  See Doc. 15 ("Response").  FXI, Inc. asserts that Aranda sued Foamex International and that there is no Foamex

International in New Mexico.  See Response at 1.  It represents that Foamex Products, Inc. was, at one time, registered to do business in New Mexico, but that Foamex Products, Inc. no longer exits. See Response at 1.  It states that, in February 2012, it received the service of process from its registered agent, which is not a registered agent for Foamex International.  See Response at 1.  FXI, Inc. argues that CT Corporation informed Aranda that Foamex International was not listed in its records or the State's records, thus putting him on notice that his service was deficient.  See Response at 2.  It asserts that Aranda never sought to name, or investigate, the proper party. See Motion to Remand at 2.  FXI, Inc. represents that, on March 22, 2012, Mr. Thomas contacted Mr. Ewing to inform Mr. Ewing that he had named the wrong defendant and that FXI, Inc. would agree to accept service, as of the date Mr. Thomas received the Complaint, if Mr. Ewing would amend the Complaint to name the proper party.  See Response at 2.  It notes that Aranda has not amended his Complaint to name FXI, Inc. as the proper Defendant.  See Response at 2.  It asserts that it explained these circumstances to Mr. Ewing and that it would consent to remand if Aranda would agree that the amount in controversy does not exceed $75,000.00.  See Response at 2.

FXI, Inc. argues that removal was proper, because the facts make it possible that the amount in controversy is over $75,000.00.  See Response at 3.  It asserts that the "Motion for Remand is entirely silent, and suspiciously so, as to whether the amount in controversy in this matter is the federal jurisdiction threshold of $75,000."  Response at 3.  It contends that Aranda has misconstrued the burden on FXI, Inc. and that he cannot "hide behind the vague assertions of his Complaint to avoid federal jurisdiction."  Response 3.  FXI, Inc. argues that it need only establish that it is possible that the amount in controversy exceeds $75,000.00 to maintain jurisdiction in federal court. See Response at 3.  It asserts that the United States Court of Appeals for the Tenth Circuit has held that a defendant "must affirmatively establish jurisdiction by proving jurisdictional facts that made

-7-

it possible that $75,000 was in play." Response at 3 (emphasis in original)(citing McPhail v. Deere & Co., 529 F.3d at 955). It argues that, once the defendant proves that the amount in controversy may exceed $75,000.00, the Tenth Circuit "justified shifting the burden onto the plaintiff." Response at 4 (emphasis in original)(citing McPhail v. Deere & Co., 529 F.3d at 955). FXI, Inc. contends that the Notice of Removal references the Complaint's factual allegations, which "more than establish that the amount in controversy quite possibly exceeds $75,000." Response at 4. It asserts that the "Plaintiff has ignored his burden in showing that $75,000 is not a possible amount in controversy and has refused to take a position as to the amount in controversy, thereby playing fast and loose with this Court." Response at 5. It argues that, when a Complaint fails to make an explicit demand, a defendant may rely on an estimate of potential damages. See Response at 5. It contends that Aranda cannot avoid removal "by 'declining to allege the jurisdictional amount.'" Response at 5 (citing McPhail v. Deere & Co., 529 F.3d at 955). FXI, Inc. further asserts that meeting the amount-in-controversy requirement is "easier said than done when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of [his] claims." Response at 6 (citing Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006)). It argues that "[i]t is clear that the extent and volume of categories of damages alleged by Plaintiff possibly could exceed $75,000 if proven." Response at 7.

FXI, Inc. contends that it may rely on evidence submitted after removal to establish the jurisdictional threshold. See Response at 8. It asserts that, if a defendant removes in good faith, a defendant can bolster that claim with other evidence "beyond the complaint itself . . . obtained in state court before removal was filed [or] . . . submitted in federal court afterward." Response at 8 (emphasis in original)(citing McPhail v. Deere & Co., 529 F.3d at 956). It argues that, the Tenth Circuit's opinion in Laughlin v. Kmart Corp. does not preclude a defendant from putting forth

additional evidence after removal.  See Response at 8-9 (citing Laughlin v. Kmart Corp., 50 F.3d at 873).  It contends that, in Laughlin v. Kmart Corp. and in the Hernandez MOO, the defendant made "no good-faith estimate of the damages alleged."  Response at 9.  FXI, Inc. asserts that, in the Hernandez MOO, a post-removal economic analysis would not suffice, because, like in Laughlin v. Kmart Corp., both the complaint and the notice of removal "failed to suggest any potential value of the claims."  Response at 9 (citing Hernandez MOO at 7).  It further asserts that Aranda's refusal to stipulate that the amount in controversy is less than $75,000.00 is "telling" as to the actual amount in controversy.  Response at 10.  It argues that Aranda's reliance on Varela v. Wal-Mart Stores, East, Inc., is misplaced, because he conflates "facts as they exist at the time . . . of removal," with proof offered after removal to establish those same facts.  Response at 10.  It contends that McPhail v. Deere & Co. abrogated the standard that the Tenth Circuit applied in Varela v. Wal-Mart Stores, East, Inc.  See Response at 10.  FXI, Inc. argues that considering a plaintiff's failure to stipulate is "essential in preserving the purpose for diversity jurisdiction because it thwarts a plaintiff's ability to game the forums."  Response at 11.  It asserts that Aranda cannot have it both ways -- arguing that the jurisdictional amount is not met while refusing to stipulate that he seeks less than $75,000.00.  See Response at 11-12.

FXI, Inc. contends that Aranda's alleged medical injuries alone are enough that, if proven, they would likely exceed $75,000.00.  See Response at 12.  It argues that a range of cases with "similar ligamentary injuries have led to damage awards over $75,000.00 on these bases alone."  Response at 12 (citing Mazyck v. Long Island R.R., 896 F.Supp. 1330 (E.D.N.Y. 1995); Calzado v. N.Y. Transit Auth., 7744 N.Y.S.2d 52 (Ct. App. 2003)).  It emphasizes that Aranda also seeks past and future medical expenses, and punitive damages.  See Response at 12-13.  Alternatively, FXI, Inc. seeks further discovery to establish the jurisdictional threshold.  See Response at 13.  FXI,

Inc. asserts that limited discovery would allow it to ascertain Aranda's past medical expenses and to make a reasonable assessment of Aranda's alleged damages.  <u>See</u> Response at 13.

FXI, Inc. next argues that its removal was timely, because of Aranda's failure to name and serve the proper defendant.  <u>See</u> Response at 14.  It asserts that "[f]ormal service -- not notice -- is required to trigger the thirty-day period for removal."  Response at 14 (citing <u>Murphy Bros. v. Michetti Pipe Stringing</u>, 526 U.S. 344, 347 (1999)).  It contends that failure to properly name a defendant in the complaint and summons is defective process.  <u>See</u> Response at 15.  It argues that, in the context of rule 15(c) of the Federal Rules of Civil Procedure, the Supreme Court of the United States rejected a commonality-of-interest approach, where it was argued that the intended defendant was "misdesignated in form only, and knew or reasonably should have known that it was the true target."  Response at 15 (citing <u>Schiavone v. Fortune aka Time, Inc.</u>, 477 U.S. 21, 26 (1986)).  FXI, Inc. argues that the same is true here, and that a summons, in New Mexico, must contain "an appropriate indication of the other parties, and the <u>name</u> of each party to whom the summons is directed."  Response at 15 (emphasis in original)(citing N.M.R.A. 1-004(B)(1)).  It contends that it "is irrelevant whether the party knows it is the real party in interest and therefore knows the case might be removable; the thirty-day time period beg[ins] when it [is] brought under the court's authority, not when it ascertain[s] it might be removable."  Response at 15 (citing <u>Fenwick v. Nationwide Mut. Ins. Co.</u>, No. 2:09-CV-572, 2009 WL 3246757, at *3 (D. Utah Oct. 6, 2009)).  It asserts that a non-existent entity was named and a different entity served, and that such circumstances do not constitute proper service.  <u>See</u> Response at 15-16.  It points out that FXI, Inc. and Foamex International are separate entities, that Mr. Thomas informed Mr. Ewing of the error, and that Mr. Ewing failed to send an acceptance of service form to it.  <u>See</u> Response at 16. FXI, Inc. argues that it was not obligated to engage in this action until counsel agreed to accept service on its

behalf and that the time to remove did not begin to run until that date.  <u>See</u> Response at 16 (citing <u>Fenwick v. Nationwide Mut. Ins. Co.</u>, 2009 WL 3246747, at *3).  It asserts that Foamex International has never done business as FXI, Inc. and, although FXI, Inc. bought Foamex International's assets and may be responsible under a theory of successor liability, FXI, Inc. remains a separate entity.  <u>See</u> Response at 16 (citing Affidavit of Andrew R. Prusky (dated May 30, 2012), filed May 31, 2012 (Doc. 15-1)("Prusky Aff.")).  It notes that the Complaint named only "Foamex International d/b/a FXI, Inc." and that the body of the Complaint never mentioned FXI, Inc. Response at 17.

On June 18, 2012, Aranda filed his Reply in Support of Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction and Defects in Removal Procedure.  <u>See</u> Doc. 18 ("Reply").  Aranda reiterates that it served FXI, Inc.'s registered agent in accordance with N.M.R.A. 1-004. <u>See</u> Reply at 1-2.  He argues that it "has become clear that CT Corporation, FXI's registered [agent], forwarded the summons and complaint to FXI."  Reply at 2.  He contends that FXI, Inc.'s "claims that it was not properly named in the complaint" are "interesting . . . for [a] corporation whose name appears in the caption of the lawsuit; whose registered agent was served; whose registered agent forwarded the complaint and summons; and whose senior Vice President admits that FXI purchased the Foamex assets in June 2009."  Reply at 2-3.  He asserts that the Complaint identifies the plant where his injuries occurred -- 7501 Meridian NW, Albuquerque, New Mexico 87121 -- and that FXI, Inc.'s website lists the same address for its Albuquerque plant.  <u>See</u> Reply at 3.  Aranda argues that <u>Schiavone v. Fortune aka Time, Inc.</u>, supports his position, because amended complaints against "Fortune also known as Time, Inc." adequately named the defendant.  Reply at 4.

Aranda also asserts that FXI, Inc. did not establish the amount in controversy and that it is not entitled to post-removal discovery.  <u>See</u> Reply at 6.  He argues that his Complaint complies with

New Mexico law, which does not allow him to provide a numerical estimate of his damages. See Reply at 7. He emphasizes that his "silent" Complaint is not a "tactic" to avoid federal jurisdiction, but is rather an attempt to comply with New Mexico law. Reply at 7. He contends that the Notice of Removal, coupled with the Complaint, does not establish whether the amount in controversy exceeds $75,000.00. See Reply at 7. Aranda asserts that FXI, Inc. made no attempt to explain its position regarding the amount in controversy in its Notice of Removal, and points out that all of the cases on which FXI, Inc. relies to establish that his injuries exceed $75,000.00 involved a wrongful death action or an extended hospital stay. See Reply at 8. He reiterates that it is FXI, Inc.'s burden to establish that the amount in controversy exceeds the jurisdictional requirement. See Reply at 8-9. He argues that the "post-removal analysis in FXI's Response simply comes too late" and that language in McPhail v. Deere & Co. suggesting that post-removal justifications are permissible is dicta. Reply at 9 (citing Hernandez MOO at 5). Aranda concedes that his Complaint alleges his injuries in more detail than the complaint which Judge Parker discussed in the Hernandez MOO, but asserts that "it is simply not accurate to label FXI's single-sentence analysis as a good faith attempt" to establish the jurisdictional amount. Reply at 10. He contends that post-removal discovery would absolve defendants of their burden to establish the amount in controversy. See Reply at 10. He argues that a defendant should obtain jurisdictional discovery only where it demonstrates the need for discovery in the notice of removal. See Reply at 10. Aranda asserts that, if the Court allows discovery where the Notice of Removal contains such bare assertions, then the defense's burden amounts to "no burden at all." Reply at 11 (citing Russell v. Shelter Ins. Co., No. 11-0816, 2011 WL 5877464, at *2 (W.D. Okla. Nov. 23, 2011)).

The Court held a hearing on June 26, 2012. Aranda gave some background on the case and the circumstances leading to his slip and fall. See Transcript of Hearing at 5:19-25 (June 26,

2012)(Ewing)("Tr.").[3]  With respect to the amount in controversy, he argued that FXI, Inc. has not

met its burden to establish that amount by a preponderance of the evidence, and asserted that the

Hernandez MOO is the case most similar to the one before the Court.  See Tr. at 6:16-7:2 (Ewing).

He contended that FXI, Inc. has alleged only that it appears the amount in controversy exceeds

$75,000.00 and asserted that there is nothing on the face of the Complaint which would allow the

Court to determine that FXI, Inc. has met the amount-in-controversy requirement.  See Tr. at 7:3-18

(Ewing).  Aranda further asserted that FXI, Inc. did not include any explanation or specific

allegations concerning the amount in controversy in the Notice of Removal.  See Tr. at 7:19-8:1

(Ewing).  The Court then asked whether a defendant has to prove facts or point to disputed facts

which would suggest that the amount in controversy exceeds $75,000.00.  See Tr. at 8:2-16 (Court).

Aranda responded that the cases refer to contested facts, but asserted that he disagreed that a

defendant could simply adopt the plaintiff's facts to get the defendant to the amount in controversy.

See Tr. at 8:17-21 (Ewing).  The Court asked what more Aranda would like to see in the Notice of

Removal, because the Complaint does not seek an amount and merely lists injuries.  See Tr. at 9:4-

11 (Court).  He argued that FXI, Inc. could attach affidavits and analogized the burden to a

defendant's burden at summary judgment.  See Tr. at 9:12-10:2 (Ewing).  He asserted that nothing

prevented FXI, Inc. from making the arguments it made in the Response in its Notice of Removal.

See Tr. at 10:9-23 (Ewing).  Aranda contended that post-removal evidence should not be relevant

to the Court's decision regarding the Motion to Remand and that the Thomas Letter, seeking a

stipulation that the damages were less than $75,000.00, came after the Notice of Removal was filed.

See Tr. at 11:18-12:12 (Court, Ewing).  The Court asked how he squared that argument with

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

language from the Tenth Circuit permitting post-removal jurisdictional discovery. <u>See</u> Tr. at 12:13-18 (Court). Aranda responded that he had not located a case that answered the Court's question, but that, if FXI, Inc. required jurisdictional discovery, it should have requested that discovery in its Notice of Removal. <u>See</u> Tr. at 13:2-12 (Ewing).

 FXI, Inc. pointed to <u>Luckett v. Delta Airlines, Inc.</u>, 171 F.3d 295 (5th Cir. 1999), on which the Tenth Circuit relied in <u>McPhail v. Deere & Co.</u>, where the United States Court of Appeals for the Fifth Circuit looked at the face of the complaint and the injuries alleged, and stated that the face of the complaint was sufficient to place $75,000.00 in play. <u>See</u> Tr. at 14:2-22 (Court). It argued that the Fifth Circuit's analysis in <u>Luckett v. Delta Airlines, Inc.</u> is consistent with the Tenth Circuit's jurisprudence and that the Tenth Circuit reached similar conclusions in <u>McPhail v. Deere & Co.</u> <u>See</u> Tr. at 15:23-16:9 (Court, Thomas). It contended that, in <u>McPhail v. Deere & Co.</u>, the Tenth Circuit permitted post-removal evidence to establish the amount in controversy and that Judge Parker's opinion in the <u>Hernandez</u> MOO is distinguishable from this case. <u>See</u> Tr. at 16:12-17:2 (Court, Thomas). FXI, Inc. asserted that, in the <u>Hernandez</u> MOO, the complaint's factual allegations were so vague as to the damages sought that the Notice of Removal could give no indication that $75,000.00 was in controversy. <u>See</u> Tr. at 17:2-16 (Thomas). It also argued that, in the <u>Hernandez</u> MOO, Judge Parker relied on <u>Martin v. Franklin Capital Corp.</u>, 251 F.3d 1284 (10th Cir. 2001), which the Tenth Circuit limited in <u>McPhail v. Deere & Co.</u> <u>See</u> Tr. at 17:17-21 (Thomas). It contended that it could not have calculated a dollar value for the damages Aranda alleges he suffered, because it had no idea what Aranda's medical costs were or how long he was out of work. <u>See</u> Tr. at 19:1-5 (Thomas). FXI, Inc. argued that the Tenth Circuit recognized the difficulty of placing a numerical value on damages when the plaintiff fails to do so in a complaint and that, in <u>McPhail v. Deere & Co.</u>, the Tenth Circuit held that a defendant need only demonstrate that

-14-

$75,000.00 could be in play.  See Tr. at 19:6-21 (Thomas).  FXI, Inc. also emphasized that Aranda alleges very specific and very serious knee injuries.  See Tr. at 20:1-11 (Thomas).  It asserted that, in its Response, it provided a survey of cases where similar knee injuries resulted in verdicts above the jurisdictional amount.  See Tr. at 20:20-21:8 (Thomas).

FXI, Inc. argued that four categories of evidence supported a finding that the Court has jurisdiction: (i) the allegations in the Complaint; (ii) post-removal evidence; (iii) the specific injuries alleged in the Complaint; and (iv) Aranda's failure to stipulate that his damages are worth less than $75,000.00.  See Tr. at 22:5-13 (Thomas).  It asserted that the failure to stipulate is against what McPhail v. Deere & Co. is trying to protect, because it is unfair for a party to argue that it should not be in federal court, but refuse to stipulate that his or her damages are less than $75,000.00.  See Tr. at 22:14-23:1 (Thomas).  It contended that, in Salazar v. GEICO Ins. Co., No. 10-0118, 2010 WL 2292930 (D.N.M. Apr. 27, 2010)(Browning, J.), the Court gave the plaintiffs repeated opportunities to stipulate that they were not seeking more than $75,000.00 in damages and that, when the plaintiffs refused to so stipulate, the Court found that the amount-in-controversy requirement had been met. See Tr. at 24:12-23 (Thomas).

With respect to the service issue, the Court stated that the issue appears to boil down to whether a caption and summons which states that Foamex International was doing business as FXI, Inc. and which was served on FXI, Inc.'s agent, constitutes proper service of FXI, Inc.  See Tr. at 26:1-17 (Court).  Aranda asserted that, if the Court goes to the New Mexico Public Regulation Commission's website entry for FXI, Inc., it lists the building where he worked and states that the operating company is Foamex Innovations.  See Tr. at 26:21-27:19 (Court, Ewing).  He argued that it would appear, to any individual looking at this entry, that the Foamex company and FXI, Inc. are one and the same, and that FXI, Inc. was properly served.  See Tr. at 27:20-22 (Ewing).  He

-15-

contended that FXI Inc.'s website lists the same address as he listed in the Complaint, demonstrating that FXI, Inc. is taking responsibility for the plant where he was injured.  <u>See</u> Tr. at 27:23-28:4 (Ewing).  Aranda argued that CT Corporation must have forwarded the Complaint and summons to FXI, Inc., because FXI, Inc. represents that it received those materials in February 2012.  <u>See</u> Tr. at 28:20-29:4 (Court, Ewing).   He asserted that the Supreme Court, in <u>Schiavone v. Fortune aka Time, Inc.</u>, discusses caption requirements and indicated that naming Fortune also known as Time, Inc. was sufficient.  <u>See</u> Tr. at 29:7-16 (Ewing).

FXI, Inc. asserted that the reference to Foamex Innovations Holding Company, on the New Mexico Public Regulation Commission's website, was not significant, because that party was not sued and simply has a name similar to a non-existent party.  <u>See</u> Tr. at 29:23-30:8 (Thomas).  The Court asked how FXI, Inc. learned about this case.  <u>See</u> Tr. at 30:9-11 (Court).  FXI, Inc. responded that it received the Complaint sometime in late February or March 2012.  <u>See</u> Tr. at 30:12-25 (Thomas).  The Court stated that it sounded like Aranda's version is probably correct: CT Corproation sent the documents back to Aranda, but also made a copy and sent it to FXI, Inc. as a heads up.  <u>See</u> Tr. at 31:1-6 (Court).  FXI, Inc. stated that it had no evidence to the contrary and that the Court's assumption sounded like a valid one.  <u>See</u> Tr. at 31:7-9 (Thomas).  FXI, Inc. argued, however, that, under <u>Murphy Bros. v. Michetti Pipe Stringing</u>, Aranda's efforts did not constitute sufficient service.  <u>See</u> Tr. at 31:21-24 (Thomas).  It asserted that service was defective, because it names a party that does not exist and never did business as FXI, Inc.  <u>See</u> Tr. at 32:11-14 (Thomas).  It contended that the summons is wrong.  <u>See</u> Tr. at 32:14-16 (Thomas).  It further asserted that this case is similar to <u>Fenwick v. Nationwide Mut. Ins. Co.</u> where the plaintiff sued the tradename companies, instead of suing the parent company, but sent a courtesy copy to the parent company.  <u>See</u> Tr. at 33:2-11 (Thomas).  FXI, Inc. argued that there the plaintiff amended its complaint to name

the correct party, and the district court held that the courtesy copy did not trigger the thirty-day removal deadline, because formal service of process on the correct party is required.  See Tr. at 33:14-34:7 (Thomas).  It contended that, here, Aranda sued Foamex International, but tried to serve FXI, Inc.  See Tr. at 34:8-13 (Thomas).  On the other hand, it conceded that FXI, Inc. bought Foamex International's assets and liabilities, but asserted that Foamex International is no longer in business.  See Tr. at 34:17-21 (Thomas).  FXI, Inc. emphasized that, when it received a copy of the Complaint, it called Mr. Ewing and explained that he had sued the wrong party, but Mr. Ewing did nothing to correct his filings.  See Tr. at 34:22-35:22 (Thomas).  It also noted that the Schiavone v. Fortune aka Time, Inc. case was a relation-back case and did not discuss what triggers the removal deadline.  See Tr. at 36:20-37:2 (Thomas).

## RELEVANT LAW REGARDING REMOVAL

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . ." (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996))).  "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."  Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d 331,

333 (10th Cir. 1982). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

     **1.**      **The Presumption Against Removal.**

     There is a presumption against removal jurisdiction. See Laughlin v. Kmart Corp., 50 F.3d at 873. "Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333. The removing party bears the burden of establishing the requirements for federal jurisdiction. See Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").

     The removing defendant bears the burden of establishing that removal is proper. See McPhail v. Deere & Co., 529 F.3d at 953 ("[A]ccording to this and most other courts, the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence'"); Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving 'all jurisdictional facts and of establishing a right to removal.'" (quoting Chavez v. Kincaid, 15 F.Supp.2d at 1119)). The Tenth Circuit has explained that, "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F.App'x 775, 778 (10th Cir. 2005)(unpublished).

     **2.**      **Procedural Requirements for Removal.**

     Section 1446 of Title 28 of the United States Code governs the procedure for removal. Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed. See Lewis v. Rego Co., 757 F.2d 66, 68 (3d Cir. 1985). "The failure to comply with these

-18-

express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand."   Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1077 (10th Cir. 1999)(quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1253 (11th Cir. 1999)).   See Bonadeo v. Lujan, 2009 WL 1324119, at *4; Chavez v. Kincaid, 15 F.Supp.2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The right to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

> Pursuant to 28 U.S.C. § 1446(a),
>
> [a] defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).  28 U.S.C. § 1446(a) has been interpreted as requiring all defendants to join in a removal petition.  See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 620 (2002)(citing 28 U.S.C. § 1446(a); Chi., Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900)); Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034-35 (10th Cir. 1998); Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)("A co-defendant . . . did not join in the petition for removal and the petition was thus procedurally defective."); 16 J. Moore, Moore's Federal Practice § 107.11[1][c], at 107-36-37 (3d ed. 2006)("Because the right of removal is jointly held by all the defendants, the failure of one defendant to join in the notice precludes removal.  This rule requires that there be some timely written indication from each served defendant . . . that the defendant has actually consented to removal.").

Section 1446 specifies the timing requirements for removal.  See 28 U.S.C. § 1446(b).  "In a case not originally removable, a defendant who receives a pleading or other paper indicating the

postcommencement satisfaction of federal jurisdictional requirements -- for example, by reason of the dismissal of a nondiverse party -- may remove the case to federal court within 30 days of receiving such information."  Caterpillar Inc. v. Lewis, 519 U.S. 61, 68-69 (1996).  "Under § 1446(b), the removal period does not begin until the defendant is able 'to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts.'"  Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077 (quoting DeBry v. Transamerica Corp., 601 F.2d 480, 489 (10th Cir. 1979)).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.  The Tenth Circuit specifically disagreed with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036 (emphasis in original).  Thus, when "an initial pleading" is "ambiguous in that it did not provide unequivocal notice of the right to remove," this thirty-day period does not begin to run in the Tenth Circuit until the defendant receives unequivocal notice of the right to remove.  Akin v. Ashland Chem. Co., 156 F.3d at 1035.

"No case, however, may be removed from state to federal court based on diversity of citizenship 'more than 1 year after commencement of the action.'"  Caterpillar Inc. v. Lewis, 519 U.S. at 69 (quoting 28 U.S.C. § 1446(b)).  Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).  The requirement that a defendant timely file the notice of removal is

mandatory, although timeliness is not jurisdictional.  See United States ex rel. Walker v. Gunn, 511
F.2d 1024, 1026 (9th Cir. 1975)("[T]he statute, insofar as the time for removal is concerned, is
imperative and mandatory, must be strictly complied with, and is to be narrowly construed.");
Bonadeo v. Lujan, 2009 WL 1324119, at *6 (citing McCain v. Cahoj, 794 F.Supp. 1061, 1062 (D.
Kan. 1992)).

### 3.       Waiver of Right to Remove.

The right to remove may be waived.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d
at 1077 (noting that a defendant who does not act within the statutory removal deadlines waives its
right to remove the action to federal court).  Cf. Akin v. Ashland Chem. Co., 156 F.3d at 1036 &
n.7 (ruling, in response to assertion made in motion to remand that one of the defendants had waived
its right to removal by moving for summary judgment in state court, "that a defendant who actively
invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from
the right to removal in the absence of adequate notice of the right to remove," and applying the
principle, after the plaintiff amended her complaint in federal court, that "once [plaintiff] decided
to take advantage of his involuntary presence in federal court to add a federal claim to his complaint
he was bound to remain there" (internal quotation marks omitted)).

Courts have held that, once a claim for enforcement of a federal right has been made in state
tribunals, a defendant waives its right to removal by "demonstrating a 'clear and unequivocal' intent
to remain in state court." Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991)(citing
Rothner v. City of Chi., 879 F.2d 1402 (7th Cir. 1989)).  See Aqualon v. Mac Equip., Inc., 149 F.3d
262, 264 (4th Cir. 1998).  Courts have found a clear intent to remain in state court may be shown
by taking "substantial defensive action" before removal, Aqualon v. Mac Equip., Inc., 149 F.3d 262,
264 (4th Cir. 1998), or by seeking a final determination on the merits of the case before removal,

see Wolfe v. Wal-Mart Corp., 133 F.Supp.2d 889, 893 (N.D.W. Va. 2001)(holding that filing a

motion for summary judgment in state court constituted waiver).  As the United States District Court

for the Western District of Virginia stated in Sayre Enter., Inc. v. Allstate Insurance Co., 448

F.Supp.2d 733 (W.D.W. Va. 2006):

> If a defendant could remove a case to federal court after a final and unfavorable
> determination had been made on the merits of the case in state court, he would be
> able to litigate the same case twice.  This situation is precisely what must be avoided
> in the interests of judicial economy, fairness, convenience, and comity.

448 F. Supp. 2d at 735.  See Haynes v. Gasoline Marketers, Inc., 184 F.R.D. 414, 416 (M.D. Ala.

1999)(finding that the defendant did not waive its right to remove, because filing an answer in state

court was not a manifestation of clear and unequivocal intent to litigate on the merits in state court);

Chavez v. Kincaid, 15 F.Supp.2d 1118, 1125 (D.N.M. 1998)(Campos, J.)(finding waiver of right

to remove when defendant served discovery requests, made a motion to dismiss, and scheduled a

hearing on the motion after it should have ascertained its removal right but before it filed its notice

of removal).

### 4.    Amount in Controversy Requirement and Diversity Jurisdiction.

Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of

citizenship, that "the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs." 28 U.S.C. § 1332(a).[4] 28 U.S.C. § 1446 establishes the procedural requirements

---

[4] 28 U.S.C. § 1332(a) provides:

(a)    The district courts shall have original jurisdiction of all civil actions where the matter
in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,
and is between--

(1)    citizens of different States;

(2)    citizens of a State and citizens or subjects of a foreign state;

for removal.[5]

In Laughlin v. Kmart Corp., the Tenth Circuit held that, where a state-court complaint does not identify a specific amount that the plaintiff seeks to recover, the burden is on a defendant seeking removal to demonstrate that this jurisdictional prerequisite is satisfied by "affirmatively establish[ing] on the face of either the petition or the removal notice" that the amount in controversy exceeds the statutory requirement. 50 F.3d at 873. In that case, the plaintiff alleged wrongful constructive discharge and sought damages in excess of $10,000.00. See Laughlin v. Kmart Corp.,

---

      (3)      citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

      (4)      a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

[5]In relation to the amount in controversy, 28 U.S.C. § 1446(c) provides:

      (2)      If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

      (A)      the notice of removal may assert the amount in controversy if the initial pleading seeks --

      (i)      nonmonetary relief; or

      (ii)      a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

      (B)      removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2).

50 F.3d at 872.[6]  The defendant attached the complaint to its notice of removal, but failed to suggest any potential value of the claims in the complaint.  See Laughlin v. Kmart Corp., 50 F.3d at 873. Thus, the Tenth Circuit was presented with a complaint and a notice of removal that both referred only to damages in excess of $10,000.00, and found the reference insufficient to satisfy the amount-in-controversy requirement  See Laughlin v. Kmart Corp., 50 F.3d at 874.

In Martin v. Franklin Capital Corp., 251 F.3d 1284 (10th Cir. 2001), the defendant's notice of removal totaled up all of the dollar figures in the plaintiff's complaint, but the Tenth Circuit considered some of the dollar amounts background information that were not linked to the plaintiff's attempts to recover damages.  Because the Tenth Circuit found that the defendant's notice of removal depended on an erroneous "construction of the [plaintiff's] pleading," the Tenth Circuit held that the defendant had not satisfied the amount-in-controversy requirement.  See 251 F.3d at 1291.

More recently, the Tenth Circuit has noted that "[d]eterminations of sufficiency of the amount in controversy are governed by an odd set of rules."  McPhail v. Deere & Co., 529 F.3d at 952.  The Tenth Circuit, in McPhail v. Deere & Co. explained:

> [I]f the in-state plaintiff wishes to remain in state court, all it needs to do is to refrain from alleging any particular sum in its prayer for relief (assuming that is permitted, as it often is, under state rules of civil procedure), and, according to this and most other courts, the defendant is required to prove jurisdictional facts by a "preponderance of the evidence" such that the amount in controversy may exceed $ 75,000.  Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001). Thus, when the proponent of federal jurisdiction is the party that does not need it,

---

[6]At the time that the Tenth Circuit decided Laughlin v. Kmart Corp. the jurisdictional amount was a minimum of $50,000.00 in controversy.  See 50 F.3d at 873 ("In order for a federal court to have original jurisdiction in a diversity case, the amount in controversy must exceed $50,000."). Congress subsequently amended 28 U.S.C. § 1332 to change the amount in controversy to matters where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

mere allegations suffice; but when the proponent of federal jurisdiction is the party in whose interest diversity jurisdiction was created, actual proof of jurisdictional facts is required, at a stage in the litigation when little actual evidence is yet available.  This set of rules bears no evident logical relation either to the purpose of diversity jurisdiction, or to the principle that those who seek to invoke federal jurisdiction must establish its prerequisites.

McPhail v. Deere & Co., 529 F.3d at 953 (citation omitted).

"[A] plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount [in controversy]."  McPhail v. Deere & Co., 529 F.3d at 955.  In the absence of an explicit demand for more than $75,000.00, the defendant must show how much is in controversy through other means.  See McPhail v. Deere & Co., 529 F.3d at 955.  The Tenth Circuit explained that "the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[ke] it possible that $75,000 [is] in play."  McPhail v. Deere & Co., 529 F.3d at 955.  The Tenth Circuit has identified the means upon which the defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint;[7] (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as answers to interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward;[8] and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate

_____

[7] In Luckett v. Delta Airlines, Inc., the Fifth Circuit upheld removal based on a complaint seeking recovery in tort for "alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization," but which did not specify a numerical value of the damage claim.  171 F.3d at 298.

[8] The Tenth Circuit gives the example of a case in which a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount.  The Tenth Circuit suggests that "a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal."  McPhail v. Deere & Co., 529 F.3d at 956.

of the plaintiff's claim, because the plaintiff's own estimation of its claim is a proper means of

supporting the allegations in the notice of removal.  See McPhail v. Deere & Co., 529 F.3d at 956.

In McPhail v. Deere & Co., the Tenth Circuit found that the defendant met its burden to support

diversity jurisdiction where the plaintiff's complaint was silent on the amount in controversy.  In

its notice of removal, the defendant represented that the amount in controversy exceeded

$75,000.00, and incorporated electronic-mail messages and letters of conversations between the

parties' attorneys discussing the value of the claim.  See McPhail v. Deere & Co., 529 F.3d at 956.

The defendant's counsel interpreted the conversations as meaning that the plaintiff was seeking

more than $75,000.00, but the plaintiff's counsel refused to concede an amount in controversy in

excess of $75,000.00, stating "it may very well be" that the amount in controversy would exceed

$75,000.00.  529 F.3d at 957.  The Tenth Circuit found that the background information provided

enough supplementary information for the district court to conclude that it was not legally certain

that the plaintiff would recover an amount less than $75,000.00.  See McPhail v. Deere & Co., 529

F.3d at 957.

        In Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006)

(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit explained how a

removing defendant asserting diversity jurisdiction in the face of a silent complaint might proceed:

> [T]he removing defendant, as proponent of federal jurisdiction, must establish what
> the plaintiff stands to recover.  We have suggested several ways in which this may
> be done -- by contentions, interrogatories or admissions in state court; by calculation
> from the complaint's allegations[;] by reference to the plaintiff's informal estimates
> or settlement demands[;] or by introducing evidence, in the form of affidavits from
> the defendant's employees or experts, about how much it would cost to satisfy the
> plaintiff's demands.  The list is not exclusive; any given proponent of federal
> jurisdiction may find a better way to establish what the controversy between the
> parties amounts to, and this demonstration may be made from either side's viewpoint
> (what a judgment would be worth to the plaintiff, or what compliance with an
> injunction would cost the defendant).  Once the estimate has been made -- and

> contested factual allegations that support the estimate have been established in a hearing under Rule 12(b)(1) by admissible evidence . . . . -- then . . . the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.

441 F.3d at 541-42 (citations omitted).[9]  The Tenth Circuit in McPhail v. Deere & Co. adopted the reasoning of the Seventh Circuit, stating:

> Meridian eliminates the double standard that would come from misunderstanding what "preponderance of the evidence" requires.  The proponent of federal jurisdiction must prove contested facts; and because a defendant has no control over the complaint, he cannot put a large sum of money in controversy simply by demanding it, as a plaintiff often can.  But once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is "legally certain" that less than $75,000 is at stake.  If the amount is uncertain then there is potential controversy, which is to say that at least $75,000 is in controversy in the case.

McPhail v. Deere & Co., 529 F.3d at 954 (emphasis in original).  Other Seventh Circuit cases have noted that events "subsequent to removal may clarify what the plaintiff was seeking when the case was removed," Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011), and that "[e]vents subsequent to removal that merely reveal whether the required amount was in dispute on the state of filing, rather than alter the current amount in controversy, can be considered in deciding what that original amount in controversy was," BEM I, LLC, v. Anthropologie, Inc., 301 F.3d 548, 552 (7th Cir. 2002).

## ANALYSIS

The Court will grant in part and deny in part the Motion to Remand.  The Court finds that FXI, Inc. has established, by a preponderance of the evidence, that the amount in controversy

---

[9]In Meridian Security Insurance Co. v. Sadowski, the district court dismissed the case for want of jurisdiction pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure.  See 441 F.3d at 537.

exceeds $75,000.00 and that the Court has subject-matter jurisdiction.[10]  The Court will, however, remand the case to the Second Judicial District Court, County of Bernalillo, State of New Mexico, because the Notice of Removal was untimely and filed outside of the thirty-day window that Congress established in 28 U.S.C. § 1446(b).

## I.     FXI, INC. HAS ESTABLISHED, BY A PREPONDERANCE OF THE EVIDENCE, THAT THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS MET.

Aranda argues that FXI, Inc. was required to establish the amount in controversy by a preponderance of the evidence.  See Motion to Remand at 4.  He further asserts that "[a] federal court determines the amount in controversy between parties on the facts as they exist at the time the defendant files a notice of removal."  Motion to Remand at 4 (emphasis in original).  Aranda contends that, because the amount in controversy was not set forth in the Complaint, FXI, Inc. was required to affirmatively establish that amount in its Notice of Removal.  See Motion to Remand at 4.  He argues that FXI, Inc.'s "conclusory allegations" that the Complaint's substantive allegations indicate that the amount in controversy is greater than $75,000.00 are insufficient to establish the amount by a preponderance of the evidence.  Motion to Remand at 5.  He points out that FXI, Inc. "did not make any attempt to explain why the damages in this case met the amount in controversy."  Motion to Remand at 6.  FXI, Inc. argues that removal was proper, because the facts make it possible that the amount in controversy is over $75,000.00.  See Response at 3.  It asserts that the "Motion for Remand is entirely silent, and suspiciously so, as to whether the amount in controversy in this matter is the federal jurisdiction threshold of $75,000."  Response at 3.  FXI, Inc. contends

---

[10]Because the amount-in-controversy is jurisdictional, the Court will decide it first, before it may proceed to the procedural-default issue.  See In re Franklin Sav. Corp., 385 F.3d 1279, 1286 (10th Cir. 2004)("Jurisdictional issues must be addressed first and, if they are resolved against jurisdiction, the case is at an end.")(citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)).

that it need only establish that it is possible that the amount in controversy exceeds $75,000.00 to maintain jurisdiction in federal court.  See Response at 3.

The Tenth Circuit's most recent opinion discussing how a defendant may establish the amount in controversy is McPhail v. Deere & Co.  In that opinion, the Tenth Circuit held that the "preponderance of the evidence standard" applies to jurisdictional facts, not jurisdiction itself. McPhail v. Deere & Co., 529 F.3d at 954.  It held that, "[b]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 956 (emphasis added). In determining that the jurisdictional amount was met, the Tenth Circuit looked to the allegations in the complaint and a series of electronic mail transmissions, included in the notice of removal, indicating that the plaintiff's counsel also believed that the amount in controversy "very well may be" above $75,000.00.  McPhail v. Deere & Co., 529 F.3d at 957.  The Tenth Circuit's decision in McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous decisions in Laughlin v. Kmart Corp. and Martin v. Franklin Capital Corp.  In Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis of Laughlin's claims for damages prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum does not establish the existence of jurisdiction at the time the motion was made."  50 F.3d at 873.  In Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's summary of the allegations and the requested relief "[did] not provide the requisite facts lacking in the complaint."  251 F.3d at 1291.

Despite the language in these cases and some tension between them, however, in McPhail v. Deere & Co., the Tenth Circuit held that, "[a]lthough this Court's opinions have not been entirely clear on [the amount-in-controversy] issue, the approach we adopt today is consistent with their

-29-

holdings and analysis." 529 F.3d at 954-55.  The Tenth Circuit also clarified its holdings in those cases.  Describing its holding in <u>Martin v. Franklin Capital Corp.</u>, in which it stated that a defendant must "establish the jurisdictional amount by a preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional <u>facts</u> that made it <u>possible</u> that $75,000 was in play, which the defendants in <u>Martin</u> failed to do." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 955 (emphasis in original). With respect to <u>Laughlin v. Kmart Corp.</u>, the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 955.  Furthermore, the notice of removal in <u>Laughlin v. Kmart Corp.</u>, referred only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute." <u>Laughlin v. Kmart Corp.</u>, 50 F.3d at 873.  Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit, in <u>McPhail v. Deere & Co.</u>, characterized its holding as consistent with its prior decisions and because <u>McPhail v. Deere & Co.</u> is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case.[11]

New Mexico law provides that a "complaint shall not contain an allegation for damages in any specific monetary amount."  N.M.R.A. 1-008.  The Court will therefore look to the allegations in the Notice of Removal, pursuant to 28 U.S.C. § 1446(c)(2), to determine the amount in

---

[11]Other courts discussing <u>Laughlin v. Kmart Corp.</u>, have noted that it employs a restrictive approach to the consideration of evidence supporting removal.  <u>See</u> <u>Sierminski v. Transouth Fin. Corp.</u>, 216 F.3d 945, 948 (11th Cir. 2000)(noting that <u>Laughlin v. Kmart Corp.</u> "is the only case cited or found which employs such a restrictive approach"); <u>Heller v. Allied Textile Cos., Ltd.</u>, 276 F.Supp.2d 175, 181 (D. Me. 2003)(noting that <u>Laughlin v. Kmart Corp.</u> limited the scope of the remand inquiry to the face of the original notice of removal).  <u>Laughlin v. Kmart Corp.</u>'s place as one of the most restrictive approaches to removal may be why the Tenth Circuit later clarified its views in <u>McPhail v. Deere & Co.</u>

controversy.  FXI, Inc. Relies upon the following facts to establish jurisdiction.  The Notice of Removal asserts that the "substantive allegations of Plaintiff's Complaint indicate that the amount in controversy exceeds $75,000."  Notice of Removal ¶ 3, at 2.  The Notice of Removal attached the Complaint.  The Complaint alleges that, when Aranda slipped and fell, he suffered: (i) a torn anterior cruciate ligament in his right knee; (ii) a lateral meniscus tear in his right knee; (iii) a grade four femoral condral adhesion in his right knee; and (iv) a severe contusion to his left knee.  See Complaint ¶ 23, at 8.  The Complaint further asserts that Aranda required medical treatment for both knees, that he required surgery on his right knee, and that he continues to feel pain and walk with a limp.  See Complaint ¶¶ 24-25, at 8.  Aranda seeks actual and punitive damages, and asserts that he has suffered "extensive and substantial injuries and damages, including past loss of earnings, future loss of earning capacity, past and future medical expenses, non-medical expenses, pain and suffering, severe and permanent and incapacitating injuries, inability to perform chores and household services, and loss of enjoyment of life."  Complaint ¶ 27, at 8, 11.  Aranda also asserts that these damages "will continue into the future."  Complaint ¶ 27, at 8.  Attached to the Notice of Removal is the Certificate of Arbitration (dated December 22, 2011), filed April 17, 2012 (Doc. 1), in which Aranda asserts that he seeks relief in excess of $25,000.00, exclusive of punitive damages, interest, costs, and attorney's fees.  See Certificate of Arbitration at 17.  In the Thomas Letter, dated April 30, 2012, which Aranda submitted to the Court on May 17, 2012, Mr. Thomas asserts that his client would be happy to consent to remand, if Mr. Ewing's client would stipulate that the amount in controversy does not exceed $75,000.00.  See Thomas Letter at 9.

The Seventh Circuit, upon which the Tenth Circuit heavily relied in McPhail v. Deere & Co., has characterized the burden on a defendant as a "pleading requirement, not a demand for proof." Blomberg v. Serv. Corp. Int'l, 639 F.3d 761, 763 (7th Cir. 2011).  The Notice of Removal focuses

on the substantive allegations of the Complaint and asserts that Aranda's alleged damages put into controversy more than $75,000.00.  As the Tenth Circuit has noted, "a plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount." McPhail v. Deere & Co., 529 F.3d at 955.  FXI, Inc., faced with a Complaint silent with respect to damages, was in the difficult position of attempting to establish the jurisdictional amount.  The Tenth Circuit held, in McPhail v. Deere & Co., relying on the Fifth Circuit's decision in Luckett v. Delta Airlines, Inc., that a court may rely on the "face of the complaint," even where a complaint does not specify a numerical value. McPhail v. Deere & Co., 529 F.3d at 956.  In Luckett v. Delta Airlines, Inc., the district court, apparently relying solely on the allegations in the complaint, found that it had subject-matter jurisdiction where the plaintiff alleged damages for "property, travel expenses, an emergency ambulance trip, a six-day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework."   171 F.3d at 298.  Additionally, in McPhail v. Deere & Co., the complaint requested damages for "medical and burial expenses, the loss of consortium and the grief of the surviving spouse, the mental pain and anguish suffered by the decedent, pecuniary loss based on earning capacity, and grief and loss of companionship," as well as punitive damages.  529 F.3d at 957.  The Tenth Circuit noted that, "[g]iven these allegations and the nature of the damages sought, the complaint on its face may be sufficient by itself to support removal." McPhail v. Deere & Co., 529 F.3d at 957.

Like the Fifth Circuit's opinion in Luckett v. Delta Airlines, Inc. and the Tenth Circuit's decision in McPhail v. Deere & Co., the Complaint's list of damages and relief sought, the jurisdictional facts, establish that the amount in controversy likely exceeds $75,000.00. See Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d at 543 ("Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether the damages (if

-32-

the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal."). Much like the allegations in McPhail v. Deere & Co. and Luckett v. Delta Airlines, Inc., the face of the Complaint, to which FXI, Inc. refers in its Notice of Removal, are sufficient to meet the amount-in-controversy requirement.   Aranda asserts that he has suffered serious, permanent injuries, which required medical intervention, surgery, and time away from work, and which left him with a need for future medical treatment, a limp, and an inability to perform major life activities.   He seeks actual damages for these injuries in addition to punitive damages for the alleged callous manner in which FXI, Inc. and its employees acted.   The Court finds that these allegations put more than $75,000.00 in controversy.   It is common in personal injury cases to settle on the basis of three times the medical expenses.   The damage appears to be primarily to the right knee.   It is hard to imagine surgery repairing the anterior cruciate ligament and other damage costing less than $15,000.00.   This would put the damages at $45,000.00.   Aranda also seeks punitive damages, however, and applying a one-to-one ratio for punitive damages, see Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 791 F.Supp.2d 1026, 1049 (D.N.M. 2011)(Browning, J.), the total damages would exceed $75,000.00. Then there are the additional damages Aranda seeks for the loss of past and future earnings.   A conservative estimate of all the damages Aranda requests would put the amount in controversy well above $75,000.00.   Furthermore, like McPhail v. Deere & Co., the allegations in the Complaint are not the only information before the Court.   The Certificate of Arbitration concedes that Aranda seeks relief in excess of $25,000.00, exclusive of punitive damages.   See Certificate of Arbitration at 17. Additionally, Aranda has refused to stipulate that his damages are equal to or less than $75,000.00, which is not unlike the plaintiff's admission that her actual damages "may very well be" greater than $75,000.00.   McPhail v. Deere & Co., 529 F.3d at 956-57.   See Salazar v. GEICO Ins. Co., 2010 WL 2292930, at *8 (finding that the amount-in-controversy requirement was satisfied and noting that

the Court "gave the Plaintiffs repeated opportunities at the hearing to disavow that they are seeking all of the $75,000.00 available under the GEICO policy").  The Court believes that this refusal to stipulate is relevant evidence; otherwise, it encourages plaintiffs to play games with the Court and with the defendant.  Although the Court would prefer that defendants make more of an attempt to make an educated numerical estimate as to damages, even where the Complaint is silent, the Court concludes that FXI, Inc., by expressly relying upon the allegations in the Complaint and asserting that they exceed $75,000.00, has provided sufficient information to nudge its case over the line and establish the jurisdictional amount.  See McPhail v. Deere & Co., 529 F.3d at 957 ("Given these allegations and the nature of the damages sought, the complaint on its face may be sufficient by itself to support removal.").

Aranda places great emphasis on Judge Parker's decision in the Hernandez MOO and argues that post-removal evidence, such as his refusal to stipulate, is inappropriate.  Judge Parker determined that, although post-removal evidence established "undisputed" evidence that the amount in controversy exceeded $75,000.00, the Tenth Circuit "has consistently held that a court cannot consider post-removal documents."  Hernandez MOO at 5.  The Hernandez MOO cites to pre-2008 cases and does not discuss the language from McPhail v. Deere & Co. which undercuts this principle.  Compare Hernandez MOO at 5 (citing Martin v. Franklin Capital Corp., 251 F.3d at 1291 n.4; Laughlin v. Kmart Corp., 50 F.3d at 873), with McPhail v. Deere & Co., 529 F.3d at 953 (noting that "there may not be time to produce more evidence in federal discovery before the court decides to rule" on a motion to remand and that, "[i]f the judge holds a hearing under Rule 12(b)(1), the defense can present evidence, but may have little to work with").[12]  Furthermore, the Seventh

---

[12]The Tenth Circuit's holding in Laughlin v. Kmart Corp., that post-removal evidence cannot be considered, is in tension with its language in McPhail v. Deere & Co. that a defendant may

Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that "events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed."  Carroll v. Stryker Corp., 658 F.3d at 681.  The Court agrees with the Tenth and Seventh Circuits that post-removal evidence can assist the Court, clarify what amount was in controversy when the case was removed, and avoid the "serious abuse" with which the Tenth Circuit has been concerned.  McPhail v. Deere & Co., 529 F.3d at 594.  There is often insufficient time in state court for a defendant to conduct any discovery before the time to remove

_____

produce additional evidence after removal.  See McPhail v. Deere & Co., 529 F.3d at 953 ("And if the plaintiff moves quickly to challenge removal in federal court, there may not be time to produce more evidence in federal discovery before the court decides to rule.").  Furthermore, the Supreme Court has held that, although certain material should have appeared in the notice of removal, it is proper to treat the notice of removal as if it had been amended to contain the relevant information contained in later-filed documents.  See Willingham v. Morgan, 395 U.S. 402, 408 n.3 (1969).  Laughlin v. Kmart Corp. would also appear to be in tension with Tenth Circuit precedent permitting defendants to remedy defects in their notice of removal.  See Jenkins v. MTGLQ Investors, 218 F.App'x 719, 723 (10th Cir. 2007)(unpublished)(granting motion to amend notice of removal to properly allege jurisdictional facts).  In circumstances, where the defendant made a simple error in its notice of removal or failed to allege a jurisdictional fact, the Tenth Circuit has held that it "would be too grudging" and "too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations" to allow such defects to prohibit amendment or require remand. Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).  See also Zamora v. Wells Fargo Home Mortg., 831 F.Supp.2d 1284, 1292 (D.N.M. 2011)(Browning, J.).  Other circuit courts of appeal have also noted the similarity between permitting amendment of a notice of removal and considering post-removal evidence.  The United States Court of Appeals for the Eleventh Circuit held, in Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007), that, although the "district court has before it only the limited universe of evidence available when the motion to remand is filed -- i.e., the notice of removal and accompanying documents," a defendant "may effectively amend a defective notice of removal upon receipt of additional evidence that supplements the earlier-filed notice." 483 F.3d at 1214-15 & n.66.  The Eleventh Circuit then stated that, "such a situation might arise where, after filing an insufficient notice of removal but before remand is ordered, the defendant receives a paper from the plaintiff that would itself provide sufficient grounds for removal."  Lowery v. Ala. Power Co., 483 F.3d at 1215 n.66.  The Court further notes that, in Laughlin v. Kmart Corp., the defendant failed to make any allegations regarding the amount in controversy in its notice of removal, relying on a reference to 28 U.S.C. § 1332, and that the Tenth Circuit did not state that post-removal evidence could not be considered, but found that the defendant's economic analysis was insufficient to establish the amount in controversy.  See Laughlin v. Kmart Corp., 50 F.3d at 873.

passes.  See McPhail v. Deere & Co., 529 F.3d at 953 ("Pre-removal discovery in state court is unlikely to have produced helpful information by [the time for removal].").  It seems inconsistent, both internally and with Congress' allowance for removal, for a court to acknowledge that there is "undisputed" evidence that the amount in controversy exceeds $75,000.00, but find that the amount-in-controversy requirement is not met, and appears to serve only to encourage plaintiffs to be obstructive.  There is a presumption against removal, but there should not be hostility to removal.  Judge Parker also found that "general or vague allegations in a complaint of a 'serious' injury and resulting damages makes it impossible for a court to determine whether the amount in controversy exceeds $75,000."  Hernandez MOO at 7.  He noted that the plaintiff alleged that she suffered from "unspecified 'serous personal injuries" and found such allegations insufficient to estimate the plaintiff's damages.  Hernandez MOO at 9.  Unlike the complaint that Judge Parker discussed in the Hernandez MOO, however, Aranda alleges specific injuries to his knees, naming the torn ligaments and other injuries he suffered, and details the damages from which he alleges he suffers.  Aranda's allegations are more similar to the allegations in McPhail v. Deere & Co. and Luckett v. Delta Airlines, Inc., which the Tenth Circuit found sufficient to satisfy the amount-in-controversy requirement.

According, the Court finds that FXI, Inc. has established, however minimally, by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.  Because Aranda does not contest diversity of citizenship, the Court finds that it has diversity jurisdiction.  The Court thus has jurisdiction and can proceed to the procedural-default issue.

## II.   THE COURT WILL REMAND THE CASE, BECAUSE FXI, INC. DID NOT REMOVE WITHIN THIRTY DAYS OF SERVICE.

Aranda asserts that FXI, Inc.'s Notice of Removal was not filed within thirty days of service

of process.  See Motion to Remand at 9.  He contends that FXI, Inc. was properly served under New Mexico law and that the Court is bound to follow state law when determining proper service. See Motion to Remand at 10 (citing Hardy v. Square D. Co., 199 F.Supp.2d at 676).  Aranda argues that, in accordance with N.M.R.A. 1-004, he served FXI, Inc.'s agent on February 12, 2012, by return-receipt, certified mail and that such service was proper.  See Motion to Remand at 10.  He asserts that FXI, Inc.'s attempt to remove the case more than thirty days after its agent was served renders the removal untimely.  See Motion to Remand at 11.  He contends that service on CT Corporation, on February 12, 2012, triggered the removal clock.  See Motion to Remand at 12.  He asserts that FXI, Inc. designated CT Corporation as its agent, that he served CT Corporation, and that service was made on February 15, 2012.  See Motion to Remand at 18.  FXI, Inc. argues that its removal was timely, because of Aranda's failure to name and serve the proper defendant.  See Response at 14.  It asserts that "[f]ormal service -- not notice -- is required to trigger the thirty-day period for removal."  Response at 14 (citing Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 347 (1999)).  It contends that failure to properly name a defendant in the complaint and summons is defective process.  See Response at 15.  It asserts that a summons, in New Mexico, must contain "an appropriate indiction of the other parties, and the name of each party to whom the summons is directed."  Response at 15 (emphasis in original) (citing N.M.R.A. 1-004(B)(1)).  It contends that it "is irrelevant whether the party knows it is the real party in interest and therefore knows the case might be removable; the thirty-day time period beg[ins] when it [is] brought under the court's authority, not when it ascertain[s] it might be removable."  Response at 15 (citing Fenwick v. Nationwide Mut. Ins. Co., No. 2:09-CV-572, 2009 WL 3246757, at *3 (D. Utah Oct. 6, 2009)).  It asserts that a non-existent entity was named and a different entity served, and that such circumstances do not constitute proper service.  See Response at 15-16.

A.   **THE ERROR IN THE COMPLAINT'S CAPTION WAS A MISNOMER OR TECHNICAL DEFECT, SUCH THAT SERVICE WAS PROPER ON FEBRUARY 15, 2012.**

28 U.S.C. § 1446(b) requires that removal be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).  The Supreme Court, in <u>Murphy Bros. v. Michetti Pipe Stringing, Inc.</u>, interpreted this provision, and held that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  526 U.S. at 347.  Thus, the issue boils down to whether FXI, Inc. was properly served, and came within the Court's jurisdiction, on February 15, 2012, when Aranda served the Complaint and summons on CT Corporation.  With respect to federal law, the United States Court of Appeals for the Fourth Circuit has held that "service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way."  <u>Morrel v. Nationwide Mut. Fire Ins. Co.</u>, 188 F.3d 218, 224 (4th Cir. 1999)(King, J.).  Several district courts have addressed similar issues concerning the time for removal and service of process on an incorrectly named defendant.  Most of the cases which the Court has located have found that the time for removal began to run when the defendant was originally served despite the misnomer.  In <u>Sawyer v. USAA Ins. Co.</u>, No. 11-0523, 2012 WL 843639 (D.N.M. Mar. 8, 2012)(Browning, J.), the Court faced similar circumstances, albeit not in the removal context, where the plaintiff mistakenly named, and obtained a default judgment against, USAA Insurance rather than the proper defendant, United States Automobile Association.  <u>See</u> 2012 WL 843639, at *1 n.1.  Although the Court determined that it need not decide whether the defendant was improperly served based on the incorrect name, the Court noted that, "[h]ad United Services received a copy of the summons and Complaint . . . the name USAA Insurance would likely be

sufficient to convey notice to United Services" for the purposes of a default judgment.  Sawyer v. USAA Ins. Co., 2012 WL 843639, at *30 n.22 (citing Graves v. Gen. Ins. Corp., 412 F.2d 583, 585 (10th Cir. 1969)).  The Court also noted that "[m]isnomer mistakes need not be treated as grounds for dismissal if intelligent persons can understand what was intended, or if the party intended to be served knows, or has good reason to know, that he has been proceeded against."  Sawyer v. USAA Ins. Co., 2012 WL 843639, at *30 n.22 (citing 62B Am. Jur. 2d, Process § 84 (2nd ed.)).

With respect to other courts that have addressed similar issues, in Lowengart v. Cephus Capital Management, LLC, 677 F.Supp.2d 1280 (N.D. Ala. 2009), the United States District Court for the Northern District of Alabama held that the misspelling of a defendant's name did not relieve him of his obligation to consent to removal within thirty days and that the defendant's contention that, because of this misspelling, he was not properly served was "silly."  677 F.Supp.2d at 1282. In Brown v. New Jersey Manufacturers Insurance Group, 322 F.Supp.2d 947 (M.D. Tenn. 2004), the United States District Court for the Middle District of Tennessee stated that the question before it was: "did New Jersey Re-Insurance Company receive a copy of the initial Declaratory Complaint through service or otherwise in November 2003 when Plaintiff served the New Jersey Manufacturers Insurance Company."  322 F.Supp.2d at 950.  The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge, answered the question in the affirmative and found that "New Jersey Re-Insurance Company was on notice of Plaintiff's originally filed lawsuit even though it was not named in the initial Complaint."  Brown v. N.J. Mfrs. Ins. Grp., 322 F.Supp.2d at 952.  Judge Wiseman found that the named defendant and proper defendant shared an address and telephone number, and that the proper defendant did not assert that it was unaware of the litigation, such that the removal was untimely and outside of the thirty day window.  See Brown v. N.J. Mfrs. Ins. Grp., 322 F.Supp.2d at 952-53.  In In re Pharmaceutical Industry Average Wholesale Price Litigation, 307

F.Supp.2d 190 (D. Mass. 2004), the United States District Court for the District of Massachusetts addressed whether removal was proper where the defendants argued that one defendant's consent to removal was unnecessary, because that defendant was misnamed in the summons and was, therefore, not properly served.  See 307 F.Supp.2d at 194.  There, the defendant, G.D. Searle, was served with a summons that named another defendant, Hoescht Marion Roussel.  See In re Pharm. Indus. Average Wholesale Price Litig., 307 F.Supp.2d at 194.  The Honorable Patti B. Saris, United States District Judge for the District of Massachusetts, found that, "[a]s a general rule of federal law, the misnomer of a corporation is immaterial if it appears that the corporation could not have been, or was not misled."  In re Pharm. Indus. Average Wholesale Price Litig., 307 F.Supp.2d at 196. Looking to Arizona state law, Judge Saris held that, "[g]iven th[e] near-uniform flexible approach to misnomers in the caselaw . . . formal service of process was effected" and that formal service "provided Searle with actual notice that it was a named defendant in the lawsuit . . . triggering the thirty-day period for consent to removal."  In re Pharm. Indus. Average Wholesale Price Litig., 307 F.Supp.2d at 196.  In Eisenmann Corp. v. High Tech Automation, No. 94 C 50108, 1994 WL 559057 (N.D. Ill. Sept. 20, 1994), the United States District Court for the Northern District of Illinois stated that the "sole issue before this court is whether the thirty-day period under section 1446(b) was triggered by High Tech's being served with a complaint in which they were misnamed."  1994 WL 559057, at *1.  There, the plaintiff used the name "High Tech Automation a/k/a Heat Sealing Technology, Inc.," when the defendant was "High Tech Automation Sealing Technology, Inc."  Eisenmann Corp. v. High Tech Automation, 1994 WL 559057, at *1.  The Honorable Judge Philip G. Reinhard, United States District Judge for the Northern District of Illinois, held that, because the defendant received the original complaint by service, "[i]ts argument that service was not proper because the complaint did not properly name it is disingenuous at best."

Eisenmann Corp. v. High Tech Automation, 1994 WL 559057, at *1.

In Fenwick v. Nationwide Mutual Insurance Company, the Honorable Ted Stewart, United States District Judge from the District of Utah, held that "Defendant's time to remove did not begin to run until it was named a proper party and served accordingly." 2009 WL 3246757, at *3. There, the plaintiff served Allied Property and Casualty Insurance Company and Nationwide Insurance, which are trade names of Nationwide Mutual Insurance Company. See Fenwick v. Nationwide Mut. Ins. Co., 2009 WL 3246757, at *1. Judge Stewart determined that the plaintiff's reliance on certain "misnomer" cases was misplaced, because the both the complaint and the summons contained the error, and because the misnamed defendant was an existing entity. Fenwick v. Nationwide Mut. Ins. Co., 2009 WL 3246858, at *3. Judge Stewart relied on Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., but did not discuss any federal cases which analyzed this more specific issue.

The Court finds that FXI, Inc. was properly served and that it filed its Notice of Removal after the thirty-day deadline had passed. Aranda served FXI, Inc.'s agent, CT Corporation, on February 15, 2012. See Motion to Remand at 2. FXI, Inc. concedes that it received service it received the service of process from its registered agent, in February 2012. FXI, Inc. did not file its Notice of Removal until April 17, 2012 -- well after thirty-days had passed from the time its agent was served. See Notice of Removal at 1. Although FXI, Inc. asserts that it was not properly served, the caption refers to FXI, Inc. Furthermore, several pieces of information connect FXI, Inc. and the defendant that Aranda identified in his Complaint: (i) the New Mexico Public Regulation Commission's corporate lookup connects FXI, Inc. and Foamex Innovations Operating Company, see Corporations Division at 16, filed April 17, 2012 (Doc. 1)("Corporate Lookup"); (ii) FXI, Inc.'s website lists the same address for its Albuquerque plant that Aranda lists in his Complaint; see FXI Locations, available at http://www.fxi.com/html/01_locations.php (last visited July 5, 2012); and

-41-

(iii) at the hearing, FXI, Inc. conceded that it bought Foamex International's assets and liabilities, see Tr. at 34:17-21 (Thomas). Thus, there was information available that would lead a plaintiff to connect FXI, Inc. to Foamex International and information in the Complaint to put FXI, Inc. on notice that it was being sued. Additionally, FXI, Inc.'s attorney, Mr. Thomas, also had difficulty describing the relationship between Foamex International and FXI, Inc. At the hearing, Mr. Thomas represented that Foamex International was still operating the facility at the time of the incident. See Tr. at 45:18-21 (Thomas). Mr. Thomas later clarified that FXI, Inc. was operating the facility during the relevant period. See Letter from Benjamin Thomas to the Court and Josh Ewing (dated June 26, 2012), filed June 27, 2012 (Doc. 28)("I write to rectify an inadvertent misstatement I made in the hearing . . . FXI was the owner and operator of the facility in question at the time relevant to the Complaint."). If FXI, Inc.'s attorney is having difficulty determining whether FXI, Inc. was the entity operating the facility at the time, because of the complexities of when the corporate transaction took place, it is unsurprising that Aranda would also have difficulty and, to cover his bases, would identify both of the corporations he knew to be involved with the facility in the caption of the Complaint. Furthermore, because the Complaint was captioned as against "Foamex International doing business as FXI, Inc." and FXI, Inc. knew that Foamex International no longer exists and that FXI, Inc.'s agent was served, it should have known that it was the real defendant.[13]

The Court finds that the circumstances of this case are similar to the "misnomer" cases it has discussed. In fact, the circumstances in favor of finding that service was properly made is stronger

---

[13]FXI, Inc. does not assert that Aranda should not have served CT Corporation or that CT Corporation is not its agent. New Mexico law permits service to be made upon a designated agent. See N.M.R.A. 1-004(G). As noted on the New Mexico Public Regulation Commission's website, CT Corporation is the designated agent for FXI, Inc. See Corporate Lookup at 7. Accordingly, service could be made upon CT Corporation -- a fact which FXI, Inc. does not dispute. See N.M.S.A. 1978, § 53-17-11.

than many of the cases discussed above, because FXI, Inc. was named in the caption of the Complaint and it was only the business relationship between the Foamex entity and FXI, Inc. that was mistaken.  The Court did not locate any New Mexico cases discussing service of process where the plaintiff misstated the relationship between corporations.  The Court was able to locate, however, two cases which discuss "misnomers" and relation back.  The Court of Appeals of New Mexico, in Romero v. Bachicha, 130 N.M. 610, 28 P.3d 1151 (Ct. App. 2001), stated:

> "[W]hen the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect," the situation is known as a misnomer, and a court may properly assume that the party had notice and should have known that, but for the mistake, the action would have been brought against the party.

130 N.M. at 614, 28 P.3d at 1155 (alteration in original)(emphasis added)(citation omitted).  In Galion v. Conmaco Int'l, 99 N.M. 403, 658 P.2d 1130 (1983), the Supreme Court of New Mexico addressed relation back where the plaintiff named "Conmaco International, Inc." and later learned that "Conmaco, Inc." was the proper party.  99 N.M. at 405, 658 P.2d at 1132.  The Supreme Court of New Mexico found that, despite this mistake in name, "Conmaco, Inc., had sufficient notice and service of process" where service was made on Conmaco International, Inc.'s agent.  Galion v. Conmaco Int'l, 99 N.M. at 407, 658 P.2d at 1134 (emphasis added).  These cases are similar to the Supreme Court's decision in Schiavone v. Fortune aka Time, Inc., where the Supreme Court held that an amended complaint against "Fortune, also known as Time, Incorporated," although "not a model of accuracy," focused "on Time and sufficiently describe[d] Time as the targeted defendant." 477 U.S. at 29.  The Seventh Circuit and the United States Court of Appeals for the Eighth Circuit, have noted that states will often forgive such "technical" defects in service.  Homer v. Jones-Bey, 415 F.3d 748, 757 (7th Cir. 2005)(noting that Indiana courts excuse "technical shortcomings in service"); Norsyn, Inc. v. Desai, 351 F.3d 825, 830 (noting that South Dakota courts will excuse "a

technical defect in the service of process where the plaintiff has otherwise substantially complied with the appropriate rule"). Romero v. Bachicha and Galion v. Conmaco International indicate that, under New Mexico law, even when a complaint errs in describing the relationship between corporate entities or misnames a party, service may still be proper, so long as the party who is intended to be sued is the party before the court. Here, FXI, Inc. was listed in the Complaint's caption, and FXI, Inc.'s agent was served with process. Additionally, even though CT Corporation disputed that it was aware of Foamex International, it forwarded the Complaint and summons to FXI, Inc. See Tr. at 30:12-25 (Thomas); id. at 31:7-9 (Thomas). It thus appears that even FXI, Inc.'s agent knew that it had been served with a Complaint and summons meant for FXI, Inc. Accordingly, the Court finds that, although there was a technical defect, FXI, Inc. was properly served under New Mexico law.

###   B.   THE COMPLAINT GAVE FXI, INC. SUFFICIENT NOTICE THAT THE CASE WAS REMOVABLE, SUCH THAT THE THIRTY-DAY PERIOD BEGAN TO RUN ON FEBRUARY 15, 2012.

The Tenth Circuit, in Akin v. Ashland Chem. Co., held that, when "an initial pleading" is "ambiguous in that it did not provide unequivocal notice of the right to remove," the thirty-day period does not being to run. 156 F.3d at 1035. In Zamora v. Wells Fargo Mortgage, the case had been pending in state court for several months and the defendant waited to remove until the plaintiff asked for leave to amend to add a federal claim to her complaint. See 831 F.Supp.2d at 1286. The Court noted that the plaintiff requested "that this Court award[] her damages, compensatory damages, punitive damages, costs, grant an injunction against Wells Fargo, and grant any other relief in her favor as deemed just and proper." Zamora v. Wells Fargo Mortg., 831 F.Supp.2d at 1295. While the original complaint referred to several numerical figures, it was not clear that these were the amounts in controversy that the plaintiff sought as damages. The original complaint mentioned that: (i) under the terms of her loan, the plaintiff would make "at least three, on-time trial

modification plan payments of $1,024.88," of which plaintiff asserted she had made sixteen; (ii) the defendant had sent the plaintiff a notice stating that, unless she could pay $10,483.33, her home would be to forfeiture; (iii) the defendant sent a second notice stating that, unless the plaintiff paid $12,835.77, her home was subject to forfeiture; (iv) the defendant sent a third notice which called for a payment of $1,024.88 per month, with a lump sum payment of $17,838.88; and (v) the plaintiff's home was worth $200,000.00.  See Zamora v. Wells Fargo Mortg., 831 F.Supp.2d at 1296.  The Court interpreted Akin v. Ashland Chemical Co.'s language in Zamora v. Wells Fargo Mortgage and found that the thirty-day removal period had not begun to run, because the original complaint did not clearly and unequivocally make the defendant aware of its right to removal on the basis of diversity jurisdiction.  See 831 F.Supp.2d at 1296.  The Court held that the original complaint, which requested unspecified compensatory and punitive damages, was ambiguous, because there were no allegations that Zamora sought as damages the values she mentioned or that the entire value of the home was in controversy.  See Zamora v. Wells Fargo Mortg., 831 F.Supp.2d at 1295-96.  The Court found that McPhail v. Deere & Co. was not on point, because "it deals with when a defendant may successfully remove a case and prove that the amount-in-controversy requirement is met, not with what information in the plaintiff's pleadings triggers a defendant's obligation to remove a case because the thirty-day period has commenced." Zamora v. Wells Fargo Mortg., 831 F.Supp.2d at 1297.  The Court's holding in Zamora v. Wells Fargo Mortgage rested almost exclusively on the Tenth Circuit's decision in Akin v. Ashland Chemical Co., which also arose in circumstances where the case had been ongoing in state court and later information which the defendant received indicated that the case was removable.  Based on Akin v. Ashland Chem. Co. and the Court's holding in Zamora v. Wells Fargo Mortgage, FXI, Inc. might argue -- but does not -- that where a complaint fails -- in compliance with New Mexico law -- to specify the value of his or

her damages, the time for removal does not begin to run.  See Zamora v. Wells Fargo Mortg., 831 F.Supp.2d at 1296 ("There are no allegations . . . that Zamora sought a specific amount in damages -- such as the value of the entire home.  It may have been possible that Zamora sought more than $75,000.00, but it was not clear and unequivocal that she would do so.").  FXI, Inc. might be tempted to raise this argument, especially when the Court has found that FXI, Inc. met its preponderance-of-the-evidence burden by only the slimmest of margins.

The United States Court of Appeals for the Second Circuit and the Eighth Circuit, applying the Tenth Circuit's same clear-and-unequivocal standard, have held that the thirty-day clock does not begin to run until the defendant is served with a document that "explicitly specifies the amount of monetary damages."  16 J. Moore, Moore's Federal Practice § 107.30[3][a], at 107-189 to -190 (3d ed. 2012).  The Eighth Circuit held, in In re Willis, 228 F.3d 896 (8th Cir. 2000), that "the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount."  228 F.3d at 897.  The Second Circuit, joining the Eighth Circuit, held, in Moltner v. Starbucks Coffee Co., 624 F.3d 34 (2d Cir. 2010), that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought."  624 F.3d at 38.

The Court has found, by a preponderance of the evidence, that the Complaint was originally removable and that the face of the Complaint sets forth allegations which satisfy the amount-in-controversy requirement.  While the Court has found that FXI, Inc. has barely met its burden of establishing the amount in controversy, FXI, Inc.'s problem is more one of form and lack of effort than of facts; it is clear that Aranda wants more than $75,000.00, or otherwise he would stipulate to go back to state court.  FXI, Inc. has made it a close question by not doing more work in the

Notice of Removal to list and quantify the damages.  Hence, the Court agrees with FXI, Inc. that the Complaint on its face gave FXI, Inc. sufficient notice that the case was removable.

In one sense, it is not necessary for the Court to decide whether the Complaint gave FXI, Inc. sufficient notice regarding whether the case was removable, because, unlike the defendant in Zamora v. Wells Fargo Mortgage, FXI, Inc. has not argued that the Complaint did not give notice that the case was removable.  See Garrett v. Selby Connor Maddux & Janer, 425 F.2d 836, 840 (10th Cir. 2005)("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.").  On the other hand, the Court has already implicitly made that decision by agreeing with FXI, Inc. that the Complaint on its face established the amount in controversy.  FXI, Inc. cannot have it both ways.  Although the Court in Zamora v. Wells Fargo Mortgage recognized that McPhail v. Deere & Co. does not set forth the applicable standard for determining whether the thirty-day period has started to run, see Zamora v. Wells Fargo Mortg., 831 F.Supp.2d at 1297 ("McPhail v. Deere & Co. is not on point, as it deals with when a defendant may successfully remove a case and prove that the amount-in-controversy requirement is met, not with what information in the plaintiff's pleading triggers a defendant's obligation to remove a case because the thirty-day period has commenced."), it would be odd for the Court to hold that, by a preponderance of the evidence, the face of the Complaint establishes that the amount in controversy is met, but that FXI, Inc. did not have clear and unequivocal notice of that fact.  In fact, in its Notice of Removal FXI, Inc. argues that it is clear, from the allegations of the Complaint alone, that the amount-in-controversy requirement is met.  See Notice of Removal ¶ 3, at 2 ("The substantive allegations of Plaintiff's Complaint indicate that the matter in controversy exceeds $75,000.").  This case is not one where the defendant believed that the case was unremovable and where later information established removability, see Zamora v. Wells Fargo Mortg., 831 F.Supp.2d

-47-

at 1286, and the parties have not informed the Court of any change that would effect the case's removability that arose from the time when the Complaint was served to the time that FXI, Inc. decided to remove.

The Tenth Circuit, in an earlier case discussing when the thirty-day clock is triggered, has explained that the removal period begins to run when the defendant is able "to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts." DeBry v. Transamerica Corp., 601 F.2d 480, 489 (10th Cir. 1979). The Tenth Circuit, even after deciding Akin v. Ashland Chem. Co., continues to cite DeBry v. Transamerica Corp. as correctly describing the standard for triggering the removal time clock. See Huffman v. Saul Holdings Ltd P'Ship, 194 F.3d 1072, 1078 (10th Cir. 1999)(citing DeBry v. Transamerica Corp., 601 F.2d at 489). FXI, Inc. was able to make a simple and short statement of the facts in its Notice of Removal, and to establish that the Court has diversity jurisdiction. Furthermore, following the Second and Eighth Circuits' approach to this issue, in a state like New Mexico -- which prohibits a plaintiff from estimating damages in the complaint -- a defendant could test the waters in state court for a lengthy period until a numerical estimate of damages is requested through discovery or, in a case like this one, could argue that the complaint clearly establishes that the amount in controversy is met, but that compliance with the thirty-day rule should be excused because the complaint was not so clear as to give unequivocal notice. In districts like New Mexico, it does not appear the Second and Eighth Circuits' rule would work, because it would allow plaintiffs to make their complaints unremovable to federal court in a diversity case, and would allow defendants to remove at any time in the hope that they can say they did not know the case was removable. Judicial efficiency and comity counsel that the district court develop rules that require the parties to put their cards on the table early in the process. That principle is most consistent with Congress' intent in

-48-

having a thirty-day deadline. Nothing in the interpretation that the Court adopts is inconsistent with what the Court did in <u>Zamora v. Wells Fargo Mortgage</u> -- where the damages were not clear on the face of the Complaint -- or <u>Akin v. Ashland Chemical Co.</u>, which also dealt with removal of a case after more information came about in an ongoing case, where the information indicating that the case was removable became available after the thirty-day deadline had passed. These circumstances are not present here. Moreover, neither the Tenth Circuit nor any district court within the Tenth Circuit has cited to <u>In re Willis</u> or <u>Moltner v. Starbucks Coffee Co.</u>, to interpret the Tenth Circuit's application of the thirty-day provision in § 1446. Given the presumption against removal, the Court believes that the better interpretation is that the Complaint gave FXI, Inc. notice that the case was removable. <u>See</u> <u>Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d at 333 ("Removal statutes are to be strictly construed, and all doubts are to be resolved against removal."). Because FXI, Inc. relies only on the Complaint in its Notice of Removal and because the Court agrees that the face of the Complaint establishes, by a preponderance of the evidence, that the amount-in-controversy requirement is met, the Court finds that the thirty-day period began to run when FXI, Inc.'s agent was served -- on February 15, 2012.

The opinions that the Court found using the clear-and-unequivocal standard involved cases where the case did not appear to be originally removable on the face of the complaint, but some later information -- like amendment or discovery -- later established removability. <u>See</u>, <u>e.g.</u>, <u>Huffman v. Saul Holdings Ltd. P'Ship</u>, 194 F.3d at 1078 (determining whether the defendant received notice of its right to remove upon receipt of an amended complaint or after taking a deposition); <u>Akin v. Ashland Chem. Co.</u>, 156 F.3d at 1035 (determining that the case was not removable until the defendant received information in an answer to its interrogatories that indicated there was federal-question jurisdiction); <u>Zamora v. Wells Fargo Mortg.</u>, 831 F.Supp.2d at 1286. For those cases,

where the state case has proceeded to discovery and the defendant has learned new information, such as the plaintiff adding a federal claim, the clear-and-unequivocal standard is necessary to protect the defendant.   There, the defendant believes that the case is originally unremovable and only removes when confronted with new information beyond the complaint.   It is the plaintiff who then argues that the defendant should have known that case was originally removable, and, without the clear-and-unequivocal standard, the defendant is faced with the difficult decision whether to: (i) remove when it does not believe removal is clear and be subject to possible sanctions if a federal finds that the case is not removable; or (ii) wait for some additional information to indicate that the case is removable and risk the expiration of the thirty-day deadline.   This case presents markedly different circumstances, because FXI, Inc. has argued that the Complaint was always removable and, in making its argument with respect to the amount in controversy, implicitly concedes it had notice that the case was removable when it was served.[14]   For a case such as this one, where the defendant has argued that the face of the complaint establishes removal, the clear-and-unequivocal standard is the same as the preponderance of the evidence standard.   It would eviscerate the thirty-day deadline that Congress established to hold otherwise, because it would allow defendants, in states like New Mexico where plaintiffs cannot plead numerical damages, to wait several months before removing a case to federal court.   If the Second and Eighth Circuit standards operated in circumstances like this, then a defendant could wait three months and, without receiving any new information, remove by arguing that originally it did not believe the complaint was clear, but that it now believes the complaint establishes the amount in controversy by a preponderance of the evidence.   It would be hard to make such an argument with a straight face, which is likely why FXI, Inc. did not attempt

---

[14]At the hearing, FXI, Inc. conceded that it viewed this timeliness issue as solely a service issue, rather than as a removal issue.  See Tr. at 31:10-15 (Court, Thomas).

to argue that the thirty-day period had not begun to run because the Complaint did not give it sufficient notice.

Because Aranda's error in describing the relationship between Foamex International and FXI, Inc. does not render his service on FXI, Inc. improper, FXI, Inc. should have removed this case within thirty days of service on February 15, 2012.  FXI, Inc. did not file its Notice of Removal until April 17, 2012 -- approximately fifty days after it was served.  The Court, therefore, finds that the Notice of Removal was untimely under 28 U.S.C. § 1446(b).  Accordingly, the Court will remand the case to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

**IT IS ORDERED** that the Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction and Defects in Removal Procedure, filed May 17, 2012 (Doc. 7), is granted.  The Court remands this case to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Donald D. Vigil
Albuquerque, New Mexico

-- and --

Josh Ewing
Steven C. Ewing
Ewing & Ewing, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Benjamin E. Thomas
Travis R. Steele
Sutin, Thayer, & Browne, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*